IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO. 2:12-CV-79-BO

| | |
|---|---|
| WILLIE ETHERIDGE, III and MARK CORDEIRO, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | )    **O R D E R** ) |
| PENNY PRITZKER, Secretary of the United States Department of Commerce and KATHRYN D. SULLIVAN, Acting Under Secretary of Commerce for Oceans and Atmosphere, | ) ) ) ) ) ) |
| Defendants. | ) |

This matter is before the Court on the parties' cross motions for summary judgment [DE 17 & 19]. The motions are now ripe for adjudication. For the reasons stated herein, the defendants' motion for summary judgment is DENIED and the plaintiffs' motion for summary judgment is GRANTED. The decision of the Secretary is REVERSED.

## BACKGROUND

Plaintiffs seek review and partial reversal of a decision issued on a petition for discretionary review after remand dated October 11, 2012 [AR 78] issued by Jane Lubchenco, the National Oceanic and Atmospheric Administration Assistant Administrator for Fisheries from an initial decision entered by Administrative Law Judge ("ALJ") Parlen McKenna on January 5, 2011 [AR 71] finding plaintiffs in violation of 50 C.F.R. §§ 600.1203(a)(2) and 600.1203(a)(3) with regard to 13 counts of shark finning alleged by the Agency, and imposing fines of $1,500 per count and 60 day permit sanctions.

This case originated as a notice of violation and assessment and a notice of permit sanction ("NOVA/NOPS") dated April 11, 2006, which alleged 18 counts of possessing shark fins without the corresponding carcasses onboard a US fishing vessel as required by 50 C.F.R. 600.1203(a)(2). The proposed penalty was $10,000 per count with additional fishing permit sanctions. On October 12, 2006, approximately one month before hearing, the Agency amended the NOVA/NOPS to change the cited violation to 50 C.F.R. § 635.71(a)(28), and changed the language in each charge to assert a violation occurred by reason of the plaintiffs "possessing or offloading shark fins in a quantity that exceeds 5 percent of their dressed weight of the shark carcasses." At a hearing held on November 13, 2007, the Agency offered evidence, which the plaintiffs did not dispute, that on 18 occasions, they possessed or landed shark fins in excess of 5% of the total weight of shark landed. Plaintiffs argued that they landed shark fins and corresponding carcasses as required by 50 C.F.R. 600.1203(a)(2) and that they acted in compliance with advice of the NOAA law enforcement agents that as long as they landed fins with the corresponding carcasses, they would be in compliance with National Marine Fisheries Service ("NMFS") regulations.

The ALJ was persuaded that the only issue was whether plaintiffs' fin to carcass ratio exceeded 5%, and as that fact was not disputed, found the plaintiffs in violation of the regulation and imposed penalties and sanctions. Plaintiffs contended that the Agency was required to prove that they finned sharks, as specified in the Shark Finning Prohibition Act, 16 U.S.C. § 1857(1)(P)(i)–(ii), and implementing regulations. Plaintiffs argued that they could rebut the presumption of finning created by the Act based on the variations within their fisheries. Plaintiffs timely sought discretionary review which was granted on February 25, 2008. The Administrator

ordered the case to be remanded to allow the plaintiffs to rebut the presumption of shark finning based on the fin to carcass ratios exceeding 5%.

Following, and in accordance with, the remand, the Agency modified its NOVA/NOPS to assert charges under 50 C.F.R. § 600.1203(a)(2), charging plaintiffs with shark finning based on the presumption of shark finning contained within the regulation as their fin to carcass ratios exceeded 5%. A supplemental hearing was held on October 13 through October 15, 2009. The parties agreed to extend the timeline for a final decision, based on the Agency's publication of a proposed modification to the ALJ's standard of review of Agency proposed penalties, which was subsequently published as a final rule *See* 15 C.F.R. § 904.204(m). The parties agreed that this governed the ALJ's decision in this case.

The ALJ rendered his decision on January 5, 2011, accepting in part plaintiff's argument that based on their fishing methods and species landed, the appropriate fin to carcass ratio would have been in excess of 5%. The ALJ calculated an "adjusted violation threshold" for each count, in effect creating a separate percentage presumption for each count of the NOVA/NOPS based on the plaintiffs' evidence that he accepted. The plaintiffs filed this action on November 29, 2012.

## DISCUSSION

I.  LEGAL STANDARDS.

A motion for summary judgment cannot be granted unless there are no genuine issues of material fact for trial. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Here, the parties agree that there are no genuine issues of material fact and that the only issue at hand is whether the ALJ and NMFS properly interpreted and applied the rebuttable presumption created by the Shark Finning Prohibition Act, Pub. L. No. 106-557 (Dec. 21, 2000).

3

This Court has jurisdiction under section 308(b) of the Magnuson-Stevens Act to review the civil penalties issued in this case. 16 U.S.C. § 1858(b). The Act provides that these penalties and sanctions must be set aside if the Court concludes that they are not "supported by substantial evidence. . . ." *Id.* Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 217 (1938). It is "more than a mere scintilla." *Id.* The substantiality of the evidence must take into account the "record in its entirety," including "whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). It is not significant that different findings might also be supported by substantial evidence. *Diehl v. Franklin*, 826 F. Supp. 874, 878 (citation omitted). To reverse, the Court must conclude that the alternative finding is compelled by the evidence. *Id.* (citation omitted).

With respect to questions of law other than an agency's interpretation of a statute it administers, courts review the determination of the agency de novo. *Bath Iron Works Corp. v. United States Dep't of Labor*, 336 F.3d 51, 55 (1st Cir. 2003). However, courts owe "substantial deference to an agency's interpretation of its own regulations." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). "[T]he agency's interpretation must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Id.* "When a court reviews an agency's construction of a statute which it administers, it is confronted with two questions." *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 842 (1984). "First, always, is the question of whether Congress has directly spoken to the precise question as issue." *Id.* If the intent is clear, that is the end of the matter. *Id.* "If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute. . . ." *Id.* at 843. Instead, "if the statute is silent or

4

ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. *Id.* The court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency. *Id.* at 844.

II. THE ARGUMENTS.

Plaintiffs base their challenge on an alleged error in the ALJ's and the Administrator's legal analysis. Plaintiffs essentially allege that the ALJ, and in turn the Administrator, erred by holding that the presumption contained in the regulations mandated his finding of responsibility on 13 counts despite plaintiffs' successful rebuttal of the 5% presumption in the statute and implementing regulation, and the Agency's lack of evidence proving shark finning. They argue that the ALJ based his findings of responsibility for the violation solely on the legal basis that the plaintiffs could not prove in each instance why their fin to carcass ratio exceeded an "adjusted violation threshold," which was in excess of 5%, essentially creating a new presumption at a higher fin to carcass ratio based on the plaintiffs' actual fishing practices, and some assumed minimum variations that affected plaintiffs' fin ratios such as species targeted, excess trimming of carcasses, and excess meat on fins.

The plaintiffs argue that to successfully rebut the presumption and force the Agency to prove all the elements of the case, including actual finning, all they needed to do was offer credible evidence that reasonably explained why their fin to carcass ratio exceeded 5%. Once they offered that evidence, they argue that they had rebutted the presumption and then the finder of fact must decide whether the fair preponderance of the evidence proves finning occurred or not, with the burden of proof on the Agency. The plaintiffs claim that the ALJ agreed that they rebutted the 5% presumption, established a new "Adjusted Violation Threshold" ("AVT") and

substituted it for the presumption, and then found against plaintiffs because the AVT required a finding of a violation unless plaintiffs could state specific circumstances as to why their fin to carcass ratios exceeded the ALJ's AVT on those dates. Plaintiffs claim that in doing so, the ALJ made an error of law because he relied on the AVT as a presumption requiring a finding of finning, rather than relying on the evidence submitted by the Agency to prove finning occurred.

Defendants, on the contrary, argue that plaintiffs were required to come forward with "reliable, credible, and probative" evidence to establish reasons why a particular fin to carcass ratio in a given charge exceeded the statutory/regulatory threshold. They argue that where the plaintiffs failed to explain the amount in excess of 5% (all of such excess, not just that there is a good reason for their ratio to exceed 5%), they then failed to rebut the presumption for that charge. Defendants say that if plaintiff had been charged with two instances of shark finning based on fin to carcass ratios of 7% and 9.5%, and could adequately explain only 2.75% of the ratio exceeding 5%, then it would be reasonable to view the plaintiffs as having rebutted the 5% presumption with respect to the 7% but not the 9.5%. Defendants further argue that this does not shift the ultimate burden of persuasion to the plaintiffs. Plaintiffs were only required to present some "reliable, credible, and probative" evidence explaining why they had exceeded the 5% percent rule on each of the 18 occasions.

III.   THE AGENCY'S INTERPRETATION OF THE PRESUMPTION.

The Court agrees with the defendants' interpretation of the 5% presumption insofar as to rebut the presumption, reliable, credible, and probative evidence is required. This interpretation of the statutory presumption is rational, consistent with the law, and is entitled to deference. NMFS administers the Magnuson-Stevens Act. NMFS has construed the terms of the Act to create a presumption of shark finning that may only be rebutted by "reliable, credible, and

probative" evidence. Determination and Order on Discretionary Review, AR 78 (Oct. 11, 2012). Under *Chevron* this Court looks to "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. Congress has not addressed what burden of proof is necessary to overcome the 5% presumption. On this narrow issue, the intent of Congress is ambiguous so the Court looks to the second step of the *Chevron* analysis.

The second question is whether NMFS's interpretation is "based on a permissible construction of the statute." *Id.* at 843. As discussed in defendant's brief, NMFS's interpretation is consistent with the Agency's interpretation of other presumptions created by the Magnuson-Stevens Act and its regulations. *See e.g., In the matter of: William Granau*, 4 O.R.W. 163, 167 (NOAA 1985). Accordingly, NMFS's interpretation that reliable, credible, and probative evidence is required to rebut the presumption is entitled to deference under *Chevron*.

However, the Agency's interpretation that plaintiffs are required to explain *all* of the excess fin to carcass ratio over 5% goes too far. Here, the Court agrees with the plaintiffs' argument. To require the plaintiffs to show justification for every single hundredth of a percentage that their fin to carcass ratio is over 5% is irrational, inconsistent with the law, and is not entitled to deference. Once again, Congress has not spoken precisely on this issue other than to say that the 5% presumption is a *rebuttable* presumption. Turning to the second question of *Chevron*, this Court does not find that NMFS's interpretation is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

When there is a presumption, the burden shifts to the other party which "must rebut the presumption to satisfy [its] burden of going forward," but when "sufficient rebuttal evidence" is introduced, "the fact finder will then will consider all of the evidence on the issue." *Keeler Brass Co. v. Cont'l Brass Co.*, 862 F.2d 1063, 1066 (4th Cir. 1988). "Regardless . . . , the burden of

7

persuasion normally remains on the [government] for [its] claim throughout the trial." *Id.* Indeed, the Agency's current position is not even consistent with its own prior interpretation of the statute. When promulgating the regulations implementing the Shark Finning Prohibition Act, NMFS clarified that "[i]t would be the responsibility of the person involved to rebut the presumption by providing evidence that there is *good reason* for the weight of the fins to exceed the 5-percent threshold." 66 Fed. Reg. 34,401, 34,402 (emphasis added). Notably, under this interpretation there is no requirement to go beyond justifying exceeding 5%. The Agency now argues that plaintiffs must now do more than justify exceeding 5%; they must justify the precise amount by which their fins exceed 5%. The Agency impermissibly elevates the evidentiary burden to that of an affirmative defense by doing so.

Further, despite Congress's stated goal to eliminate shark finning, it stretches the term "permissible construction" too far to suggest that Congress intended to leave fisherman holding a burden to affirmatively prove that they had not engaged in shark finning by establishing to some degree of certainty that every ounce of fins they landed were not from finned sharks or else face fines in the hundreds of thousands of dollars. If Congress had intended to do this it could have simply established a 5% threshold and not allowed for it to be rebutted.

Courts will reverse an agency regulation based on an interpretation that is arbitrary, capricious, or manifestly contrary to the statute. *Chevron*, 467 U.S. at 844. Here, the requirement, for reliable, credible, and probative evidence is owed deference, but the Agency's requirement that plaintiffs must justify every ounce of fin that exceeds the 5% threshold is arbitrary, capricious, and manifestly contrary to the statute which establishes a *rebuttable* presumption. Accordingly, that part of the Agency's interpretation must be reversed.

## IV. THE ALJ'S DECISION.

Without the requirement that plaintiffs justify every ounce of fin that exceeded the 5% threshold, the result of this case must be in favor of the plaintiffs. Without being able to rely on a heightened presumption, the AVT, there is no substantial evidence which supports the ALJ's ruling. The ALJ specifically noted that there was no evidence of finning other than the presumption, yet he went on to hold that because plaintiffs' adjusted averages fell short of disproving finning, the allegations were proven in 13 of the 18 counts. The ALJ laid out the extent to which his ruling relied on the presumption in his assessment of the fines and penalties.

> "It is almost as likely as not that [plaintiffs] could have been found not to have engaged in shark finning on such a charge. Several of the charges could have gone either way depending on what was accepted and to what degree. The statutory and regulatory scheme at issue, however, mandated that [plaintiffs] come forward with sufficient evidence to rebut each of the charges. [Plaintiffs'] failure to do so results in the finding of charges proven on 13 of the Agency's charges for all the reasons discussed above.
>
> To reiterate, however, the findings of [plaintiffs'] unlawful shark finning was not supported by overwhelming evidence. Indeed, without the benefit of the statutory presumption, the Agency's case would not stand. The shark finning proven was not so egregious (based on the record evidence) to indicate that [plaintiffs] were blatantly disregarding the law as first might have appeared based on the unadjusted fin-to-carcass ratios. Unfortunately for [plaintiffs], if they actually did not engage in any shark finning, they are unable to rebut the presumption because: (1) the exculpatory evidence no longer exists; and (2) they relied on the Agency's written and oral pronouncements that if the fins match the carcasses, no charges would be filed for exceeding the 5% ratio. The undersigned struggled with this conundrum and, but for the presumption, would have ruled in favor of [plaintiffs]."

(Decision, AR-E-71 at pp. 70–71).

The ALJ ruled for the plaintiffs on five charges and against the plaintiffs on thirteen charges. The ALJ ruled for the plaintiffs on five of the charges because he found that the plaintiffs had effectively rebutted the 5% presumption with reliable, credible, and probative evidence for those charges alone. In the remaining thirteen counts, the ALJ held that plaintiffs

9

had failed to rebut the presumption. The ALJ made these determinations after considering the evidence that plaintiffs offered as reasons for why they exceeded the 5% fin to carcass ratio on these eighteen occasions. The ALJ explained at length and in painstaking detail the evidence considered, whether or not it was reliable, credible, and probative and how it affected his determination in a 112 page decision.

Using all of the evidence, the ALJ arrived at the adjusted violation threshold ("AVT") which he used to determine whether or not there was a violation. As the ALJ explained, he began with the statutory ratio of five percent and then accounted for the plaintiffs' sworn testimony that they had fished largely for sandbar sharks (which have a higher fin to carcass ratio), kept all eight fins instead of only four, kept the fins on water and ice, kept extra meat on the fins, and trimmed waste material from the shark carcasses. In establishing the AVT, the ALJ, in effect, agreed that plaintiffs had successfully rebutted the 5% presumption. In each instance the ALJ found an AVT greater than 5% fin to carcass ratio. (Decision AR-E-71 App'x 2 at pg. 87). By establishing an AVT of over 5%, the ALJ ruled that the plaintiffs had proven they had good reason to exceed the 5% threshold that was supported by reliable, credible, and probative evidence. Once the ALJ decided that, the presumption against the plaintiffs was rebutted and the burden of proof should have shifted back to the defendants. They then needed to offer evidence which proved that plaintiffs had committed a violation.

Defendants failed to offer any such evidence. (Decision AR-E-71 pp 30–36). The Agency relied only on the presumption and offered no direct evidence to support a claim of finning. *Id.* The ALJ did not weigh any evidence to see whether the preponderance of the evidence showed that plaintiffs had engaged in finning. Rather, he modified the presumption by establishing the AVT and then measured the plaintiffs' self-reported catch weights against his new AVT. Where

10

the fin to carcass ratio exceeded his AVT, he found plaintiffs had committed a violation and where the ratio was less than the AVT, he found that they had not. This was regardless of how close the actual fin to carcass ratio was to the AVT amount for each charge. Indeed, the highest ratio percentage over the AVT was a ratio of 6.72% versus an AVT of 6.13%. The smallest was a ratio of 6.4% versus an AVT of 6.35%. He treated his AVT exactly like he would have treated the 5% threshold. It was the only measuring stick applied to determine if a violation had occurred. However, in doing so, he recognized that the 5% threshold should not apply to plaintiffs because they had shown they had good cause to exceed that fin to carcass ratio by provided credible, reliable, and probative evidence. Without such evidence the ALJ would not have had to calculate an AVT and would have just measured the reported fin to carcass ratios against the 5% threshold. By using the AVT, the ALJ effectively shifted the burden of proof away from the Agency and onto the plaintiffs. The ALJ further noted his reliance on a presumption of violation by noting that plaintiffs, having relied upon the statements of the NOAA agents and written guidelines, are unable to access the exculpatory evidence that could clear them. Further, he noted that the actual fins and carcasses, which if physically counted, would likely exonerate them. The ALJ's analysis is not supported by substantial evidence and NMFS's affirmation of that decision was "arbitrary and capricious."

\* \* \*

Because the Agency's interpretation of the presumption in the statute requires plaintiffs to explain *all* of the excess fin to carcass ratio over the 5% presumption, the Agency's interpretation does not pass the *Chevron* test, it is not entitled to deference, and this Court refuses to follow the interpretation. Plaintiffs need only establish that they had good reason to exceed to 5% fin to carcass ratio and support it with reliable, credible, and probative evidence. The ALJ's

11

analysis is not supported by substantial evidence and NMFS's affirmation of that decision was arbitrary and capricious. Both are solely supported by an untenable interpretation of the statutory presumption. Accordingly, this Court denies defendants' motion for summary judgment and grants plaintiffs' motion for the same. The decision of the Secretary is reversed. The plaintiffs are clearly not responsible for shark finning in violation of the Fishery Conservation and Management Act and the penalties and sanctions imposed are set aside.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is DENIED and the plaintiffs' motion for summary judgment is GRANTED. The decision of the Secretary is REVERSED. The penalties and sanctions imposed are SET ASIDE. The clerk is directed to enter judgment accordingly and to close the file.

SO ORDERED.

This the 22 day of November, 2013.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

12

Case 2:12-cv-00079-BO   Document 22   Filed 11/25/13   Page 12 of 12